No. 24,667.

C. W. BROWN, *Appellant,* v. THE UNION OIL COMPANY, of Wichita, et al., *Appellees.*

SYLLABUS BY THE COURT.

OIL AND GAS LEASE — *Nondevelopment — Action for Cancellation — Equitable Order Made.* Where a tract of 2,347 acres of land was leased for gas and oil exploration and development for a fixed term of five years "and as long thereafter as gas or oil or either of them is produced from said land," and which bound the lessee to complete a well within six months, with an obligation to pay rent for each six months until its completion, and no exploration or development was undertaken until the fifth year of the term, at which time a number of dry holes were drilled and a small amount of oil was produced, all within the limits of 320 acres of the leased property, and no exploration or development was undertaken on any portion of the remaining 2,027 acres, and where successful and profitable production had been achieved on adjacent lands on three sides of this property, the rights of the lessee in the 320 acres on which some oil is being produced cannot

Brown v. Oil Co.

be forfeited; but the fact that the lessee incurred much expense in drilling dry holes on the 320 acres is not a sufficient excuse for complete failure to explore and develop the remaining 2,027 acres; and in withholding a decree of forfeiture of the unexplored and undeveloped portions of so large a leasehold, a court of equity should require a reasonable minimum of exploration and development of the entire tract to be prosecuted with reasonable diligence. Otherwise the lessee's interest in the unexplored and undeveloped portions of the property should be canceled so that the lessor can make other arrangements for their exploration and development.

Appeal from Elk district court; ALLISON T. AYRES, judge. Opinion filed July 7, 1923. Reversed.

*A. F. Sims,* of Howard, for the appellant.

*S. B. Amidon, S. A. Buckland, H. W. Hart, Glenn Porter,* all of Wichita, and *H. W. Schumacher,* of El Dorado, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action to cancel part of a gas and oil lease of 2,347 acres of land because of nondevelopment.

Plaintiff alleged ownership of the fee, and exhibited the lease dated November 13, 1915, which was to endure for a fixed period of 5 years "and as long thereafter as oil or gas, or either of them, is produced from said land" by the lessee or his successors. The lessee's obligation was to complete a well within 6 months from date of contract, or to pay 25 cents per acre for each 6 months until its completion, and it was agreed that the completion of a well should be a full liquidation of all rent during the remainder of the term. It was also stipulated that the lessee and successors should have the right, on payment of a dollar, to surrender the lease for cancellation. Plaintiff also alleged, in substance, that prior to the time this action was begun, in 1921, there had been no drilling or other development on some 2,027 acres of the leased property, and no development on any part of it until within a few months of the expiration of the fixed term of 5 years, but during the fifth year there was considerable drilling on 320 acres of the leasehold, and a small amount of oil was being produced thereon prior to November 13, 1920, and some drilling and some inconsiderable production was secured since that date.

Plaintiff prayed—

"That said lease be declared to be at an end as to each and all parts of said acreage save and except as to such portion of said 320 acres as the court in

equity hold is necessary to protect the production procured upon said lease-
hold, . . . that the balance of said leasehold be canceled and set aside
and held for naught, . . . and that the plaintiff have such other and fur-
ther relief as to the court appears equitable and just."

Defendant's answer disclosed that shortly after this action was
begun the corporate lessee was placed in receivership in the federal
court in July, 1921, and that a federal receiver, also made a defend-
ant herein, was in possession of the property; that in May, 1920,
during the fifth year of the lease, development on this leasehold be-
gan and a certain water line, pump house, and engine were installed
on the premises; that in September, 1920, a well was sunk 765 feet
at a cost of $2,050, which proved to be a dry hole; that in October,
1920, another well was sunk 705 feet which at first produced 30
barrels of oil per day and was still producing oil in paying quantities
at the rate of 5 barrels per day; that on November 12, 1920, a third
well was begun and sunk 750 feet, by November 25, 1920, which
proved to be a dry hole; that on November 23, 1920, a fourth well
was begun and sunk 709 feet by December 6, 1920, which produced
some oil; that about the time the third and fourth wells were being
drilled another well was drilled 1,650 feet which proved to be a dry
hole; that a sublessee of defendant, H. H. Fenton, drilled a well in
May, 1920, which was producing some oil; that Fenton drilled an-
other hole to a depth of 1,700 feet which made some showing of oil
but produced none in paying quantities. Defendant further alleged:

"That there are now three wells on the said lease . . . producing oil and
being pumped . . . and that the said wells have actually produced oil
. . . in the amount of eight hundred fifty-five and sixty-seven hundredths
barrels, and that on January 15, 1922, there was in the tanks on said lease, oil
which was produced by the said wells in the amount of 154.14 barrels; that
there is some oil on the premises produced by the said wells suitable for fuel
oil, in the amount of about two hundred barrels; that the aforesaid amount
of oil does not include the amount of oil which was used on the said premises
in pumping and handling oils since the completion of the said wells, and that
there has probably been used in this way, two hundred barrels."

Defendant also pleaded adverse marketing conditions, and the
great sums it had expended and debts it had incurred in the de-
velopment of part of the leasehold, and

"Defendant now expresses its intention to further develop the said lease
with due diligence and alleges that there would have been further develop-
ment of said lease except for the pendency of this suit, which was filed on or
about the 18th day of June, 1921, and that this action has prevented the said
defendant from further development on the said lease; the defendant now

comes into court and offers and tenders performance on its part, with due diligence, and offers to do equity and to perform all of the covenants on the part of the lessee contained in the said lease and to do such things as the court of equity may properly and lawfully direct in the premises."

On this joinder of issues the cause was tried. The evidence tended to prove the main facts as pleaded by both parties. The court refused to cancel the lease or any part of it, and made no provisional orders concerning future development, and entered judgment for defendant.

It will be noted from the last quoted language of defendant's answer that the judgment entered in its behalf was broader than it expected to get. Should not the judgment have been somewhat as foreshadowed in defendant's answer, and as outlined in *Howerton v. Gas Co.*, 81 Kan. 553, 106 Pac. 47; 82 Kan. 367, 108 Pac. 813; and *Alford v. Dennis*, 102 Kan. 403, 170 Pac. 1005.

There is some development on 320 acres of plaintiff's land, part of which was done before the expiration of the five years' fixed term of the lease. Defendant's rights and the rights of Fenton, sublessee, should be fully protected. But outside of that half section, there are over 2,000 acres on which at the end of seven years not one thing has been done towards exploration or development, although the evidence shows that considerable development has been profitably effected on lands nearby on three sides of plaintiff's lands covered by this lease. In *Alford v. Dennis*, supra, this court said:

"Unless the plaintiff's tract was to be developed some time there was no reason to include it in the lease, and as it stands it is of no value to defendants. Unless the defendants had a *bona fide* intention to prospect and develop this tract they had no proper purpose in leasing it, and to cancel the lease will do them no injury. While equity abhors forfeitures it likewise abhors injustice.

"Since plaintiff's lands are burdened with an oil and gas lease he is entitled to have those lands prospected for oil and gas within a reasonable time." (p. 406.)

We do not fail to note that defendant has sunk a great deal of money and incurred heavy debts in drilling dry or unprofitable holes on a limited acreage of plaintiff's lands. But as to these, the court's observations in *Elliott v. Oil Co.*, 106 Kan. 248, 252, 253, 187 Pac. 692, are pertinent:

"Second, as to defendant's grievance: Trial court canceled the lease. This was a hardship on appellants. They had spent large sums of money in prospecting, and had drilled three or four wells, one of which would produce a large volume of gas, if a market could be obtained for it. Unfortunately, however, aside from some small sales to drilling outfits, the lessees have been un-

able to sell the gas. A large pipe line crosses the country near by, but it is a high-pressure line, and it is impossible to force the gas from the lessee's wells into that trunk line without a pressure pump which could be constructed only at a ruinous expense. . . .

"As the matter stands, the lessor's property is no more productive to him than if the lessee had found no gas. And while the lessees have expended much money to drill these gas wells, the wells are of no present or prospective value to them. In such a situation the lessor seems to be entitled to a termination of the lease under the plain text of the contract. Cleared of this lease, it may be possible for the lessor to make other arrangements to secure production."

In *Alford v. Dennis,* supra, it was inferred that damages might be ascertainable to compensate the lessor for breach of the lessee's implied contract to develop. Here, apparently, the defendant is bankrupt; at least, it is under a receivership, which probably puts it altogether out of consideration that plaintiff could be compensated in money damages for defendant's failure to develop. Yet the plaintiff is undoubtedly entitled to substantial redress. He or his predecessors in ownership leased this large body of land in the confident expectation that the lessee for the mutual profit of both would prospect and develop it. While it was leased as one tract, it apparently was intended for subdivision, and there has been some subdivision of a small part of it between defendant and Fenton. If there had been more subdivision, there would probably have been more exploration and more results. Plaintiff does not ask for the cancellation of the whole lease but of such major part of it, about 2,027 acres, on which no prospecting or development has been undertaken. This court reiterates, however, its general attitude towards actions to forfeit oil and gas leases for breach of implied contracts to develop, and that less drastic redress should be sought for to do justice between the parties. Plaintiff concedes that the rights of defendant on the 320 acres whereon there is some oil production should be protected, and cancellation of the lease so far as that portion of the land was properly denied. As to the other 2,027 acres, more or less, the defendant and the receiver say that they are ready, willing and able to go ahead with exploration and development, and justice will not be withheld by giving them a reasonable time in which to do so. They should be required to select and designate the particular tracts, say of 40 acres each, on which they propose and intend to begin exploration and development, and as to these tracts selected and designated by defendants they should be required to commence explora-

tory and development work within 90 days, and prosecute such work with reasonable diligence, and that on failure so to do their interest therein should be canceled, and as to all other portions of plaintiff's lands not included in the 320 now under some development and not included in the 40 acre tracts to be selected by defendant for exploration and development within 90 days the leasehold rights of defendant therein should be canceled, and the trial court should retain jurisdiction to insure compliance with its decree which should be formulated substantially as outlined herein. To that end the judgment of the district court is reversed and the cause remanded for further proceedings.