### NEWMAN v. REPLOGLE et al.

No. 19093.   Opinion Filed Oct. 15, 1929.

Gilder & Rose, for plaintiff in error.

Jess I. Miracle and A. Francis Porta, for defendants in error.

REID, C. This suit was brought to cancel an oil and gas lease as to part of the land covered by the lease, and to quiet plaintiffs' title against the defendant lessee for failure to develop.

The case was tried on the testimony of one of the plaintiffs, and a stipulation made by the parties; the material facts agreed on being:

On the 24th day of April, 1911, the owners of the east half of the southwest quarter and the southwest quarter of the southwest quarter of section 29, township 12, range 12 in Okmulgee county, for a recited consideration of $1, made an ordinary commercial oil and gas lease on this land for a term of five years and as much longer thereafter as oil or gas might be produced therefrom by the lessees. And the lease provided royalties of one-eighth for oil, $150 per well for gas, and carried $1 per acre annual delay rentals during five years in which no well was required to be commenced. The lessees were the defendant and two other parties, but defendant acquired the other interests before any development of the lease, and has since remained the owner of all the lease.

About two years after the lease was made the plaintiffs bought and still own and are in possession of the southwest quarter of the southwest quarter of the land covered by the lease. On April 1, 1916, the lessee completed a well at a depth of 2,400 feet, in the northwest corner of the northwest quarter of the southwest quarter, and in June, 1917, another well was drilled near the north center location of the northwest quarter of the southwest quarter, which produced about 30 barrels for a short time at a depth of 1,600 feet; ceased to produce and was deepened to 1,900 feet in 1918, and then made about 18 barrels a day. In March, 1920, a third well was drilled to 2,451 feet in the northwest corner of the southeast quarter of the southwest quarter which pro-

duced neither oil nor gas. The second well cost defendant $6,500 and the third one $12,000. No development has been had on plaintiffs' land and they have received nothing by way of royalty, because of oil produced on the northeast quarter of the southwest quarter, and have been paid no rentals, and have received nothing from said lease, or from the lessee, either as rentals or royalty. The one-eighth of the oil produced from the land has been paid to the owners of the east half of the southwest quarter of said section. The first two wells drilled have been producing ever since, and are now producing about two barrels per day; and their production in 1926 was worth $793.35. There are no producing oil or gas wells offsetting the lands owned by these plaintiffs. And it was further agreed:

"That an oil and gas mining lease, five years in term, and usual to this field in form, could be sold on the southwest of the southwest quarter at a price of $—— per acre.

"That the plaintiffs have repeatedly made demand on defendants that they should drill and develop said property, and the lessee declines to do so, on the ground that it would not be profitable."

Plaintiff Miracle testified that, in 1922, he sold a lease on the northwest quarter of the southwest quarter of the same section for $1,500, with a contract to drill a well to the Wilcox sand. In pursuance of this contract, a well was drilled to about 2,600 feet, and was dry. The same parties offered him $25 an acre and a test well on the 40 acres in controversy. And that within six months prior to the trial he had offers for a lease on the land, and he now believes that if he had it clear he could trade with the parties who formerly wanted the lease.

The court found that the defendant had abandoned and forfeited his right under the lease as to plaintiffs' land because of failure to develop, and entered judgment canceling the lease as a cloud on plaintiffs' title. The defendant appealed.

The defendant complains that the court erred in overruling his demurrer to the petition; but that question may be considered along with his contention that the evidence submitted is insufficient to support the judgment, as they, in effect, present the same question.

The last well drilled by the lessee on any of the leased premises did not produce; was on a tract adjoining plaintiffs', and was drilled five years before this suit was filed and seven years before the trial. And in the meantime other parties were offering to explore this tract. With this situation disclosed by the evidence, it is agreed that plaintiffs have repeatedly demanded that the lessee develop their property, but that he declines to do so on the ground that it would not be profitable. There is no intimation in the record that the lessee entertains any idea that he will ever attempt to comply with plaintiffs' request for development.

In the case of Papoose Oil Co. v. Rainey et al., 89 Okla. 110, 213 Pac. 882, similar facts to these here presented were there involved, and this court stated the applicable rule of law in this language:

"A court of equity will declare a forfeiture of an oil and gas lease because of the breach of an implied covenant to diligently operate and develop the property when such forfeiture will effectuate justice, but the granting of such relief depends upon the facts and circumstances surrounding the particular case; and if the evidence shows that a part of the leased premises under an oil and gas lease has been properly developed with reasonable diligence by the lessee, and other parts have not, the court may cancel the lease as to the undeveloped portion and permit the lessee to continue to operate the developed part thereof," and affirmed the judgment of the lower court canceling the lease on the 40 acres out of the original lease of 160 acres.

While in the case of Fox Petroleum Co. v. Booker, 123 Okla. 276, 253 Pac. 33, this court held that, under the particular facts of that case, the judgment of cancellation could not stand, yet the rules of law by which this question should be determined were then so clearly stated, we quote from the opinion as follows:

"Our conclusion, from a careful study of the cases on abandonment, is that there can be an abandonment of the whole lease by the lessee based upon an intention to abandon, so there can also be an abandonment of a portion of the lease. Further, an unreasonable delay on the part of the lessee in the further exploration of the premises, plus the lessee's declaration that further drilling would be unprofitable, is evidence from which the intention to abandon the operation and purpose of the lease as to the undeveloped portion may be inferred. Abandonment is largely a question of intention, but the intention of the lessee may be inferred from his acts and conduct as well as from express declarations. Parish Fork Oil Co. v. Bridgewater Gas Co., supra. If this 100 acres were to remain undeveloped and unprospected, there was no object in retaining it under the lease. Alford v. Dennis, supra (102 Kan. 403).

"The principle, as we understand it, is

that development of every part of the lease is an implied condition. Therefore, whether the undeveloped portion be a single tract remote from the, rest, or a considerable portion of a very large tract, or a deeper stratum, the existence of which may be doubtful, or the east 100 acres of a tract of 160, it is an implied condition that the lessee will test every part. When he abandons all further testing, and disclaims any obligation to test, he may be required likewise to surrender all claim to the property."

The doctrine announced in the foregoing opinions has also been applied in these cases: Carder v. Blackwell Oil & Gas Co., 83 Okla. 243, 201 Pac. 252; Pelham Petroleum Co. v. North, 78 Okla. 39, 188 Pac. 1069; Scott v. Price, 123 Okla. 172, 247 Pac. 103; Donaldson v. Josey Oil Co., 106 Okla. 11, 232 Pac. 821.

It therefore seems well established in this state that a court of equity will cancel a part of an oil and gas lease and leave the remainder in force where such cancellation will accomplish justice. The facts of this case seem to call for the application of the foregoing rule.

The judgment should be affirmed. It is so ordered.

TEEHEE, JEFFREY, DIFFENDAFFER, HERR, and HALL, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Appeal and Error," 4C.J. § 2869, p. 900, n. 96.