## HEARD et al. v. HOUSTON GULF GAS CO. et al. *

### No. 7503.

Circuit Court of Appeals, Fifth Circuit.

June 14, 1935.

*Rehearing denied July 17, 1935.

Sam'l B. Dabney, of Houston, Tex., for appellants.

Palmer Hutcheson and Thomas Fletcher, both of Houston, Tex., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal from a decree dismissing on motion a bill of complaint for want of equity. The subject-matter of the litigation is an oil and gas lease of 179 acres, executed February 8, 1926, by the plaintiffs as lessors and by the Houston Gulf Gas Company, one of the defendants, as lessee, for the term of two years from its date, and as long thereafter as oil or gas should be produced in paying quantities. The lessee agreed to commence actual drilling of a well on 50 acres to be selected by it within 30 days, and on the remaining 129 acres with-

in 60 days, and after drilling these two wells was given the option to surrender the whole lease, or either of the tracts, upon giving notice to the lessors. The lessee also had the privilege of assigning "in whole the lease of the 50 acres, and of the 129 acres, * * * but not in subdivided parts." The lease provided for "even exploitation"; that is, development equal as nearly as practicable to the development of other leases in the same oil field; subject to this provision the lessee and its assigns had the right to determine whether wells in addition to the first two should be drilled. Offset wells might be required by the lessor, but only if wells producing gas were within 500 feet of the boundary of the premises and wells producing oil were within 200 feet; provided that wells producing both gas and oil within 500 feet should be offset. The original bill, which was filed in December, 1931, alleged that the original lessee had made an assignment on November 30, 1929, to the Union Producing Company, and that the latter had transferred all its rights on February 24, 1931, to the United Production Corporation. All three of these corporations were made parties defendant; it being alleged that the original lessee had assigned its right to prospect for oil only, and not for gas also, and that such assignment was in violation of a provision of the lease. No complaint was made as to the drilling of the first two wells, nor was it alleged that the necessity had arisen for the drilling of offset wells. Damages were asked for failure properly to develop the lease and to protect it against drainage by wells on adjacent lands in the same oil field, and on account of waste. But it appears from the bill that the original lessee "and/or" the other two defendants which claim by assignment have drilled at least 8 wells on the lease, averaging one to 23 acres, whereas on adjoining leases there was an average of only one well to 64 acres; and that of the wells on the lease one was drilled and commenced producing oil in 1930. Plaintiffs admit that they have received royalties on the production from all these wells of both gas and oil. They say they accepted payment under protest, but whether their protests were based on the assignment of the lease or on some other ground is not stated. It is stated that defendants are producing oil and gas on adjacent leases. No attempt is made to point out specifically or definitely what should be done to prevent drainage and waste. It is not clear whether the complaint is that the defendants have drilled too few wells on plaintiffs' land or too many on adjoining lands. By amendment the United Gas Public Service Company, which it was alleged "was organized to simplify the operations and corporate structures" of the original defendants, was brought in and submitted to the jurisdiction of the court. By the same amendment three other corporations, United Gas, Electric Power & Light, and Electric Bond & Share Companies, were sought to be made parties defendant because they were alleged to be holding companies of the defendants and of each other "from the top down," but their motions, based upon ex parte affidavits, to quash the service made upon them and be dismissed out of the case, on the ground that they were not doing business in Texas, were sustained. A large part of the bill, as well as of the brief of plaintiffs, is taken up in an effort to show that these holding companies were doing business in Texas through their subsidiaries, the defendants now before the court, and therefore that as to them the service of process was good. The decree of dismissal allowed the plaintiffs 10 days within which to apply for leave further to amend the bill; but they declined to make further amendment, and so the decree became final.

The prayers of the bill are: (1) To cancel the assignments from the Houston Gulf Gas Company, the original lessee, to the Union Producing Company, and from the latter to the United Production Corporation, on the ground that such assignments, since they purport to authorize the right to prospect for oil only and not for gas also, were not permitted by the lease; (2) to require the original lessee, and also those holding under it by assignment in the event the assignments should be held valid, to proceed with the development of the lease according to its terms within a time to be fixed by the court, or, if such development should not be so proceeded with within that time, to cancel the lease and thereby clear the title of plaintiffs; (3) to issue a mandatory injunction requiring the defendants, or any of them, if they should elect and be entitled to proceed with further development of the lease, to maintain even exploitation so as to prevent

drainage and waste; (4) to establish the liability of each defendant, and to "untangle the confusions of accounts and liabilities of the defendants due to their attempted shifts of ownership and liability, and their efforts to escape liability by the entanglements of holding companies, and interferences growing thereout," etc.; (5) to award to the plaintiffs damages for breaches of the lease contract.

■ Assuming, without deciding, that the original lessee was not permitted by the terms of the lease to assign the right to prospect for oil and retain the right in itself to prospect for gas, in our opinion the plaintiffs are estopped to contend that the assignment should be canceled. The bill alleges that eight wells were drilled by the lessee "and/or" those claiming under it. It is therefore consistent with the bill that some of the wells at least were drilled by the assignee or its transferee. It is certain that one of the wells was drilled after the United Producing Company took its assignment and before it transferred its rights to the Union Production Corporation. If plaintiffs were entitled to insist upon cancellation of the assignment notwithstanding their acceptance of royalty, they should have objected promptly to the drilling of wells by one claiming under the assignment. It is not alleged, and consequently is not to be inferred, that their protests were based on unauthorized drilling rather than on some other ground of complaint that is now urged. So far as appears, therefore, plaintiffs stood by and permitted the drilling to proceed without objection. Under these circumstances, they should not now be heard in a court of equity to say that the assignment of the lease was invalid, or was not authorized by them.

■ The court did not err in refusing to decree specific performance. After completion of the initial development, as to which no complaint is made, the lessee and its assigns had the right to surrender the lease, and therefore they could not under the terms of the contract. be compelled to proceed further under it. Rutland Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955; Javierre v. Central Altagracia, 217 U. S. 502, 30 S. Ct. 598, 54 L. Ed. 859; Miami Coca-Cola Bottling Co. v. Orange Crush Co. (C. C. A.) 296 F. 693. A decree for specific performance will not usually be granted unless it be made to appear that some definite provision of the contract is not being complied with. Ellis v. Treat (C. C. A.) 236 F. 120; United Fuel Gas Co. v. Swiss Oil Corp. (C. C. A.) 41 F.(2d) 4. A blanket order to proceed with the development of an oil and gas lease, which has been developed to the full extent specifically provided for in the contract, means nothing; for the party ordered to perform cannot possibly know what it is he is required to do. The bill of complaint does not allege that defendants have failed to do any particular thing required by the contract. This is not a case where the lessee has failed to develop or has abandoned the lease. The bill of complaint is so indefinite and uncertain in its allegations as to preclude the plaintiffs from invoking the so-called Kansas doctrine [1] which prevails in Texas,[2] and under which, in extraordinary circumstances, the lessee may be required either to proceed with development or submit to the cancellation of his lease. From what we have said it follows as a matter of course that in our opinion plaintiffs are not entitled to a mandatory injunction.

■ There is nothing in the contention that plaintiffs cannot prove their damages without "untangling the confusions of accounts." They seek to establish the joint and several liability of the defendants, and they can do that as readily in a court of law as in a court of equity. Their claim for damages, the collection of which after all is the real object of the suit, is of course a purely legal claim. But it is argued that, if plaintiffs are remitted to their action at law, much of their claim will be barred by the state statute of limitations. Even if they could maintain this equity suit, the bar of the statute would govern, since the jurisdiction at law and in equity would be concurrent. McNair v. Burt (C. C. A.) 68 F.(2d) 814, and cases there cited. The plaintiffs declined to amend so as to leave out their prayers for equitable relief and state purely a legal cause of action for the damages they claim to have sustained. In this state of the pleadings, the trial court was not obliged formally to transfer the case to

[1] Brown v. Union Oil Co., 114 Kan. 166, 217 P. 286.

[2] Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 19 S.W.(2d) 27; Cosden Oil Co. v. Scarborough (C. C. A.) 55 F. (2d) 634.

the law side of the docket and then dismiss it for want of prosecution.

We conclude that the bill of complaint was rightly dismissed for want of equity. It therefore becomes immaterial to inquire whether the trial court erred in granting the motion of the holding companies to quash the service sought to be made on them.

The decree is affirmed.